IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| RODNEY COLLINS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | NO.  5:09-CV-109 (HL) |
| VS. | : | |
| | : | |
| BRANDON BRIDGES, *et al.,* | : | |
| | : | Proceedings Under 42 U.S.C. §1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |
| | : | |

## RECOMMENDATION

Before the Court is a Motion for Summary Judgment filed by Defendants Brandon Bridges, Anthony Dixon, Toni Franklin, Michael Holsey, John Jeanes, John Napier, Sherri Waller, and Rose Williams.  Doc. 75.  For the reasons set forth below, and because the evidence in the record before the Court presents some genuine issues of material fact requiring determination at trial, it is **RECOMMENDED** that the Motion be **GRANTED** in part and **DENIED** in part.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted if "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed.R.Civ.P. 56(a).  A genuine dispute of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law. Id. at 324–26. If the evidence presented by the nonmovant is "not significantly probative" or is "merely colorable," then summary judgment may be granted. Anderson, 477 U.S. at 249.  In fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ." Celotex, 477 U.S. at 322.

### Defendant Bridges, Dixon, Napier, Holsey, Waller, and Franklin

The evidence in the record of this case presents genuine issues of material fact regarding Plaintiff's claims that, in violation of the Eighth Amendment during an incident on May 15, 2007, Defendants Bridges, Dixon, Napier, and Holsey used excessive force against him while Defendants Waller and Franklin looked on but failed to intervene.  On Motion for Summary Judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).  For purposes of this motion, therefore, the facts are taken primarily from Plaintiff's deposition testimony.

Based on the evidence, taken in the light most favorable to Plaintiff, the facts of this case are as follows.  At approximately 6:00 p.m. on March 15, 2007, during Plaintiff's confinement in the C Hall dormitory at Scott State Prison, Defendant Correctional Officer Brandon Bridges announced last call for the evening meal. Shortly thereafter, Defendant Sergeant Anthony Dixon, the officer who was supervising the flow of inmates going to and from the dining area, radioed Defendant Bridges and asked how many inmates were ready to eat.  Bridges advised Dixon that nine inmates were ready.  In response, Dixon directed Bridges to send the nine inmates and then lock down the

dorm. Moments later, several other inmates including the Plaintiff approached Defendant Bridges and asked to go eat. Bridges informed them that they had missed their opportunity and, as such, would not be permitted to eat. In response, the inmates became upset and tried to walk past Bridges. To prevent them from leaving, but while Plaintiff was still in the doorway, Bridges closed the door from the outside. In so doing, the door slammed against Plaintiff's arm or shoulder.

Bridges then contacted Dixon and informed him that additional inmates wanted to eat. Dixon came to the dormitory, explained to these inmates that this was the last time they would be allowed to eat late, and informed them that they would each receive a disciplinary report. Dixon then instructed Bridges to prepare the Disciplinary Reports.

Pursuant to Dixon's instructions, Bridges positioned himself in the doorway and asked each inmate for his identification card. When asked, Plaintiff stated his name but refused to provide his I.D. card. He then attempted to move past Bridges. As Plaintiff was passing through the doorway, Bridges jabbed him in the side with his clipboard. When Plaintiff turned around, Bridges dropped his clipboard and struck Plaintiff above his right eye with his hand. At that point, an altercation ensued.

Upon hearing the commotion, Dixon came to assist Bridges. During the struggle that followed, all three men stumbled down a short flight of stairs onto a landing. In his attempt to break up the fight, Dixon grabbed Plaintiff by the neck and then radioed for help. Dixon was then able to separate the men. Then, to keep him still, Dixon kept Plaintiff pinned against a wall.

Soon afterwards, in response to Dixon's call for help, Defendants Holsey, Napier, Franklin, and Waller came to the building. Upon arriving on the scene, Defendant Holsey directed Defendant Franklin to retrieve a video camera and told Defendant Waller to move the other inmates back into the dorm. He then ordered Plaintiff to turn around so that he could be handcuffed. At that point,

Holsey grabbed Plaintiff's left arm and slammed him against the wall. Once the handcuffs were secured, Holsey slammed Plaintiff against the wall a second time and then threw him to the floor.

Then, Defendant Holsey, along with others that Plaintiff could not see, began to knee, kick, punch, and stomp on Plaintiff. During the course of this assault, Defendant Napier arrived. According to Plaintiff, Napier grabbed him by the ankles, flipped him on to his back, and dragged him down three flights of stairs to the first floor. There, Plaintiff was made to stand and walk with Holsey to the security office.

Once inside the security office, Napier and Holsey took turns striking Plaintiff in the head for several minutes. At one point, Holsey palmed a padlock in order to increase the severity of his blows. At the conclusion of this assault, Holsey grabbed Plaintiff by the ankles and dragged him out of the office into the hallway. Once in the hallway, Holsey called Defendant Franklin and instructed her to guard the Plaintiff. Soon afterwards, Holsey returned and instructed Plaintiff to get on his knees to be shackled. Once the shackles had been applied, and in full view of Defendant Franklin, Holsey backhanded Plaintiff in the face.

Plaintiff was then escorted to the medical unit by Dixon. There, Plaintiff underwent a use of force assessment. The report of this assessment indicated that Plaintiff had swelling to his left eye and cheekbone, scratches in front of his right ear and right side of his neck, an abrasion and redness on his right shoulder, and a scrape to his right elbow. These injuries were treated with an ice pack and Motrin.

According to his Medical records, the following day, and on March 27, 2007, Plaintiff returned to medical and was seen by Dr. Ajibade. During these visits, Dr Ajibade found no

additional indications of injury resulting from the incident and, as such, determined that no further treatment was necessary.

On April 17, 2007 and April 20, 2007, Plaintiff returned to medical complaining of periodic pain which he attributed to being forcefully handcuffed. In response, Plaintiff was treated with anti-inflammatory medication and instructed on some gentle range of motion exercises.

Some fifteen months later, on August 6, 2008, Plaintiff presented to the medical unit at Valdosta State Prison complaining of pain in his right arm. Upon examination, he was found to have a full range of motion and was given ibuprofen. During subsequent visits on November 18, 2008, December 10, 2008, and December 17, 2008, Plaintiff repeated his complaints and added that he was experiencing numbness. During each of these visits, Plaintiff was examined, found to have a full range of motion, treated with mild pain relievers, and instructed to perform light exercises.

Defendants have contested Plaintiff's testimony. Through affidavits, Defendants dispute Plaintiff's description of how the incident began and deny each of his assertions about being hit, punched, kneed, kicked, stomped, backhanded, slammed against the wall, and dragged down stairs. Furthermore, Waller and Franklin state that they did not personally use force against the Plaintiff and did not see any other Defendant use force.

The evidence on record in this case presents genuine issues of material fact regarding the force used by Defendants during the March 15, 2007 incident. The use of force against a prison inmate is governed by the Eighth Amendment prohibition of cruel and unusual punishment. To establish a claim for excessive use of force under the Eighth Amendment, a prison inmate must present evidence to show that the force was applied "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline."

Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  Courts and juries evaluating claims of excessive force consider five factors "relevant to ascertaining whether force was used 'maliciously and sadistically for the very purpose of causing harm.'" Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999)(quoting Whitley, 475 U.S. at 321)).  These five factors are:

> (1) the extent of injury;
>
> (2) the need for application of force;
>
> (3) the relationship between that need and the amount of force used;
>
> (4) any efforts made to temper the severity of a forceful response; and
>
> (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

Id.  Plaintiff's evidence, if believed, raises serious concerns about the need for the application of force, the relationship between that need and the amount of force used, and the extent of the threat to the safety of staff and inmates.

Plaintiff's evidence indicates that he was continued to be beaten after he had been restrained. Based on Plaintiff's version of the facts, there was no need for an application of force after Plaintiff was restrained and on the ground, certainly not for the sort of beating Plaintiff describes.  "Officials may not use force against a prisoner who has already been subdued because '[t]he use of force must stop when the need for it to maintain or restore discipline no longer exists.'" Council v. Sutton, 366 Fed. Appx. 31, 36 (11th Cir. 2010)(unpublished opinion)(quoting Skrtich v. Thornton, 280 F.3d 1295, 1304 (11th Cir. 2002)).

Accepting Plaintiff's version of the facts, a reasonable jury could determine that these beatings were intended as retaliation for Plaintiff's alleged assault on a Defendant Bridges. Defendants, in their arguments, focus not on the actual application of force, but rather upon the

injuries that resulted.  Specifically, Defendants contend that Plaintiff's allegations are so lacking in credibility and so thoroughly contradicted by the medical evidence of his injuries that they simply cannot create a genuine issue of material fact.  Stated differently, Defendants essentially argue that Plaintiff's injuries are far less severe than those that would be expected to result from such savage beatings.

The medical evidence is insufficient to eliminate genuine issues of material fact.  The use of force assessment prepared by the medical unit indicates that Plaintiff presented with swelling to his left eye and cheekbone, scratches in front of his right ear and right side of his neck, an abrasion and redness on his right shoulder, and a scrape to his right elbow.  Depending on its credibility judgments, a reasonable jury could determine on the one hand that these injuries were consistent with Plaintiff's description of the use of force, or could find on the other hand that these injuries were less than would be expected from such a beating.  Accepting the injuries as corroboration of Plaintiff's testimony, then, a jury could determine that the use of force he describes actually occurred, was unnecessary, was out of proportion to any perceived danger or need to restore discipline, and was imposed solely for the purpose of inflicting pain in a sadistic and malicious fashion.  Because these Defendants have failed to meet their burden of showing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law, their motion must be denied.

### Defendants Jeanes and Williams

Plaintiff's allegations in support of his claims against Williams and Jeanes are improperly based on a theory of respondeat superior and, as such, are not sufficient to demonstrate any genuine dispute of material fact.  "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior

or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir.2003) (internal quotation marks and citation omitted). Supervisory officials may only be held liable when they have personally participated in unconstitutional conduct or where there is "a causal connection between [their] actions ... and the alleged constitutional deprivation." Id. To establish this causal connection, a plaintiff must show that the supervisor: "(1) instituted a custom or policy which resulted in a violation of the plaintiff's constitutional rights; (2) directed his subordinates to act unlawfully; or (3) failed to stop his subordinates from acting unlawfully when he knew they would." Gross v. White, 340 Fed. Appx. 527 (11th Cir. 2009) (citing Goebert v. Lee County, 510 F.3d 1312, 1331 (11th Cir.2007)).

With regard to Williams and Jeanes, the only relevant allegation offered by Plaintiff is his wholly unsupported assertion that Williams and Jeanes failed to intervene or prevent him from being subjected to excessive force, despite their awareness of Dixon, Holsey, and Napier's reputation for using excessive force against inmates. Without more, such a conclusory allegation is simply not sufficient to demonstrate a genuine issue of material fact regarding whether Williams or Jeanes personally participated in any unconstitutional conduct. Moreover, it is also not adequate to show that they instituted a custom or policy which resulted in a violation of the Plaintiff's constitutional rights; directed their subordinates to act unlawfully; or failed to stop their subordinates from acting unlawfully when they knew they would. Consequently, Williams and Jeanes are entitled to summary judgment.

In accordance with the above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED** in part and **DENIED** in part. Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district

judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

    **SO RECOMMENDED**, this 6th day of September, 2011.

                                      s/ Charles H. Weigle  
                                      Charles H. Weigle  
                                      United States Magistrate Judge